UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                            :
MARIBEL BONILLA-BUKHARI,
                                                            :
                        Plaintiff,                                OPINION AND ORDER
                                                            :
        -against-                                                 18 Civ. 263 (GWG)
                                                            :
NANCY A. BERRYHILL
Acting Commissioner of Social Security,                     :

                        Defendant.                          :

------------------------------------------------------------x

**GABRIEL W. GORENSTEIN, United States Magistrate Judge**

      Plaintiff Maribel Bonilla-Bukhari ("Bonilla-Bukhari") brings this action pursuant to 42

U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security

(the "Commissioner") denying her claim for Supplemental Security Income and Disability

Insurance Benefits under the Social Security Act (the "Act"). Both parties have moved for

judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).[1] For the reasons

stated below, Bonilla-Bukhari's motion for remand is denied and the Commissioner's motion is

granted.

I. <u>BACKGROUND</u>

      A. <u>Procedural History</u>

      Bonilla-Bukhari applied for Disability Insurance Benefits ("DIB") and Supplemental

---

[1] <u>See</u> Plaintiff's Motion for Judgment on the Pleadings with Memorandum of Law, filed
Aug. 9, 2018 (Docket # 18) ("Pl. Mem."); Notice of Cross-Motion, filed Nov. 9, 2018 (Docket
# 24); Memorandum of Law in Support of the Commissioner's Cross-Motion for Judgment on
the Pleadings and in Opposition to Plaintiff's Motion for Judgment on the Pleadings, filed Nov.
9, 2018 (Docket # 25) ("Def. Mem."); Plaintiff's Reply Brief, with Tables of Cases and
Authorities and Certificate of Service, filed Dec. 10, 2018 (Docket # 28) ("Pl. Reply").

Security Income ("SSI") on May 20, 2014.  See Certified Administrative Record, filed May 10, 2018 (Docket ## 11, 11-1, 11-2, & 11-3) ("R."), 20, 92, 100.  She alleged that her disability began on December 30, 2013, when she was 50 years old.  R. 92-93, 100-01.

The Social Security Administration ("SSA") denied the applications, R. 98, 107, 115-21, and Bonilla-Bukhari sought review by an Administrative Law Judge ("ALJ"),  R. 131-37.  An initial hearing was held on April 19, 2016, before an ALJ.  R. 45-69.  The ALJ scheduled a supplemental hearing in order to consider information contained in Bonilla-Bukhari's Worker's Compensation records, R. 64-65, 68, 72, which was held on August 2, 2016, before the same ALJ, R. 70-91.  In a written decision dated September 14, 2016, the ALJ found Bonilla-Bukhari not disabled within the meaning of the Act.  R. 20-28.  On November 9, 2017, the Appeals Council denied Bonilla-Bukhari's request for review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner.  R. 1-6.  This action followed.

B.  The Hearing Before the ALJ

Bonilla-Bukhari was represented by attorney Connor Devereaux at her hearings.  R. 48, 70, 72.  During the first hearing, Bonilla-Bukhari testified that she lived on Staten Island on the second floor of a house with her husband.  R. 50.  There were approximately nine stairs leading to her apartment.  R. 51.  She had four grown daughters and two grandchildren.  R. 51.  She did not have a driver's license, traveled to the hearing by taxi, rarely took public transportation, and when she did take public transportation, had to travel with someone else.  R. 50-51.  When she would take the train, she needed to use the elevator.  R. 52.  Her husband was supporting her, R. 52; he did most of the housework and laundry, R. 63; and her brother and sister would cook for her and assist her during the day while her husband was at work, R. 64.  In a typical day, Bonilla-Bukhari would stay in bed and watch TV, and one of her siblings would stay home with

her during the day to prepare food for her and help her use the bathroom.  R. 64.

Bonilla-Bukhari explained the incident that caused the onset of her alleged disability.
R. 55.  While working as a Certified Nurse's Assistant ("CNA") at Staten Island Care Center in
June 2012, <u>see</u> R. 53, Bonilla-Bukhari slipped on water and toothpaste that was on the floor of
the hospital's psychiatric unit while she was walking over to render care to one of the residents
of that unit.  R. 53, 55.  When she slipped, her "whole body was flipped on the floor," and she
injured her left leg, left arm, her lower back, and buttocks, which all hit the floor.  R. 55.  She
also injured her right hand while trying to prevent the fall.  R. 55.  Six months after her fall, on
December 31, 2012, Bonilla-Bukhari attempted to return to work at Staten Island Care Center,
but quit after three hours because she could not perform the physical demands of the job.  <u>See</u>
R. 53-54.  In 2014, she made some income from selling food that she prepared at home.  R. 54,
56.  In January 2015, Bonilla-Bukhari attempted to return to work as a CNA at a different
hospital, but had to leave during orientation because of pain in her leg.  R. 53, 56.

Bonilla-Bukhara also testified about her impairments.  In addition to pain in her left knee
and left leg, she experienced severe issues with muscle spasms in her back.  R. 57.  She testified
that she could not receive cortisone injections for her back pain because the shots "lock[ her]
leg."  R. 57.  Since having an arthroscopy and a meniscectomy on her knee in 2015, her knee has
gotten worse.  R. 57.  She testified that she uses a cane to walk all the time, including in her
house, because her left leg trembles and can cause her to fall.  R. 57-58.  She can stand for about
20 minutes before having to sit down because of pain in her leg.  R 58-59.  She also experiences
swelling in her legs, which she addresses by elevating her legs while in bed, sometimes using a
pillow for assistance.  R. 59.  In addition, she has edema in her shoulder, which causes pain,
R. 60, and she has herniated discs in her neck from a prior accident, which occurred in 2003.

R. 55-56. She has been taking Percocet for pain management since 2012. R. 62-63.

Bonilla-Bukhara also testified that she experiences problems with "digestion and bowel movement[s]," including constipation, and that the medication she takes for this causes symptoms including "[v]omiting . . . nausea, dizz[iness], [and] headaches." R. 60. She has a history of breast cancer, and experiences symptoms including numbness and "pain in [her] nipple to [her] armpit," and having her arm "lock[]," which makes it difficult to comb her hair, dress herself, and tie her shoes. R. 61. Bonilla-Bukhara testified about her asthma and breathing difficulties, explaining that she takes Advair 150, Azmacort, and albuterol, and becomes winded after walking approximately half a block. R. 61-62.

Bonilla-Bukhari's attorney asked her several questions about treatment of her left knee injuries. R. 73-77. Bonilla-Bukhari testified about her conversations with doctors about her need for future knee surgery. R. 73. She stated that she has gotten three or four opinions, and has been advised that she may need a partial or full knee replacement, and that continuing to drain the cyst behind her knee may not be fruitful as it will keep coming back. R. 73. In response to questioning by the ALJ, she testified that in 2015, Dr. Michael Kang performed surgery to repair a torn meniscus. R. 73-74. Following the surgery, she attended physical therapy, though there was some delay in beginning physical therapy, apparently due to a misunderstanding between Bonilla-Bukhari and her doctor. R. 74. She attended physical therapy approximately three or four times after her surgery, but stopped because the physial therapy began to cause muscle spasms and pain in her leg and back. R. 75.

During the second hearing, Bonilla-Bukhari again testified about her use of her cane, explaining that she uses it "[b]ecause there's times when [her] leg really, really gets swollen," and because her leg "gets so numbed up [she] cannot move [it]." R. 76. She explained that she

used her cane outside, and in her house sometimes, though she can also use the walls for support in her house. R. 76.

Bonilla-Bukhari also testified about why she can no longer perform her work as a CNA. She explained that because of pain and issues with her leg and left side, she would not be able to move patients, and is not able to stand up for very long. R. 76-77.

The ALJ then heard testimony from a vocational expert ("VE"), Frank Linder. R. 77-91. The VE identified Bonilla-Bukhari's past jobs as "nursing assistant" and "direct care aid," which both have an exertional level of "medium." R. 83. However, the VE found that Bonilla-Bukhari performed both these jobs at the "heavy" level. R. 83-84. The ALJ then posed several hypothetical questions to the VE. First, the ALJ asked the VE to "assume a hypothetical individual of the claimant's age and education with the past jobs" the VE had identified, restricted to light work, with additional limitations, including that the particular person "could stand or walk for a total of four hours in an eight-hour workday," and could "reach frequently [w]ith their upper left extremity, . . . can handle frequently, finger frequently and feel frequently," assuming the person is right-hand dominant. R. 84. The ALJ further instructed the VE to assume that the hypothetical person could "occasionally climb ramps and stairs, never climb ladders, ropes or scaffolds, occasionally balance and occasionally stoop, but never kneel, crouch or crawl," and that the individual "should never be expos[ed] to unprotected heights," should never operate a motor vehicle, and "should have no concentrated exposure to dusts, odors, fumes or pulmonary irritants." R. 84. In addition, the ALJ instructed the VE to assume that this person "should be allowed to sit or stand alternatively at will providing this person is not off task more than five percent of the work period." R. 84. In addition, the VE was to assume that "this individual could occasionally push or pull." R. 84

The VE confirmed that such a hypothetical individual could not perform any of the prior jobs Bonilla-Bukhari performed, either as she actually performed them or as they are generally performed in the national economy. R. 85. However, the VE testified that the hypothetical individual could perform the positions of recreation aide, routing clerk, and information clerk. R. 85. The ALJ next asked the VE to assume an additional limitation, which was that the hypothetical individual "would be limited to jobs that can be performed by using a hand-held assistive device only for uneven terrain or prolonged ambulation." R. 85. The VE testified that such an individual would be able to perform the jobs of routing clerk and information clerk, but not recreation aide. R. 85. In addition, such a person would be able to perform the job of inspector. R. 85.

The ALJ asked the VE to assume that the hypothetical individual would have to use the handheld assistive device at all times when standing. R. 86. The ALJ stated that this would not change his assessment of available jobs. R. 86. The ALJ asked the VE to assume that this hypothetical person was off task twenty percent of the time, or off task fifteen percent of the time. The VE stated that while the individual could be off task fifteen percent of the time, at twenty percent the jobs would not be available. R. 86. The VE further testified that the hypothetical individual could be absent once per month, but more than once per month would be unacceptable. The VE stated that the information about the jobs he discussed was based on the information contained in the Dictionary of Occupational Titles ("DOT"), and that information about the percentage of time off-task and about absences was based upon his work experience and reading material, as was information about "the sit/stand option." R. 87.

Bonilla-Bukhari's attorney examined the VE. The attorney asked the VE whether Bonilla-Bukhari had any transferrable skills from her past job to sedentary work, and the VE

confirmed that she did not. R. 87. The attorney asked whether Bonilla-Bukhari would be able to perform any jobs at the light level if she were to need a cane for all standing and walking, and the VE stated that she could perform the jobs of routing clerk and information clerk, but not the job of inspector. R. 87. The ALJ interjected, explaining that in his earlier hypothetical, he had meant to ask the VE to assume that the individual needed the cane for all standing. R. 88. The VE stated that there was a difference in job availability depending on whether the cane was needed for all standing, versus for all standing and walking. R. 88. The attorney asked the VE whether an individual "who needs a cane at all times for standing and walking would be generally limited to type sedentary occupat[ion]s," to which the VE replied affirmatively, explaining that this was "because usually there's involvement of one hand depending on the kind of work the individual may do." R. 88. The VE then identified the additional job of office helper as a position the hypothetical individual, as described by the attorney, could perform. R. 90.

### C. The Medical Evidence

The Commissioner has provided a summary of the medical evidence contained in the administrative record. See Def. Mem. at 4-18. The Court had directed the parties to specify any objections they had to the opposing party's summary of the record. See Scheduling Order, filed May 11, 2018 (Docket # 12), ¶ 5. Plaintiff has not provided a summary of the medical record. Accordingly, the Court adopts the Commissioner's summary of the medical evidence as accurate and complete for purpose of the issues raised in this suit. We discuss the medical evidence pertinent to the adjudication of this case in Section III below.

### D. The ALJ's Decision

The ALJ denied Bonilla-Bukhari's application for DIB and SSI on September 14, 2016.

R. 20-28.  Following the five-step test set forth in SSA regulations, the ALJ found that Bonilla-

Bukhari met the insured status requirements and had not engaged in "substantial gainful activity

since December 30, 2013, the alleged [disability] onset date."  R. 21.  At step two, the ALJ found

that Bonilla-Bukhari had the following severe impairments: "left knee osteoarthritis and Baker's

cyst, degenerative disc disease of the cervical spine with radiculopathy, asthma, and peptic

ulcer."  R. 21.  The ALJ also noted that Bonilla-Bukhari had the other nonsevere impairments of

hemorrhoids, gastroesophageal reflux disease, chronic rhinitis, status post right mastectomy, and

elevated fasting glucose.  R. 21.  At step three, the ALJ concluded that none of Bonilla-

Bukhari's severe impairments singly or in combination met or medically equaled an impairment

listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings").  R. 22.  The ALJ considered

Listings 1.02, 1.04, and 3.03, in determining that Bonilla-Bukhari did not exhibit the necessary

medical criteria.  R. 22.

Before moving to step four, the ALJ assessed Bonilla-Bukhari's residual functional

capacity ("RFC").  R. 22-26.  The ALJ determined that Bonilla-Bukhari retained the RFC "to

perform light work" with the following limitations:

> she can stand or walk for a total of 4 hours in an 8-hour workday; occasionally
> push/pull; she can frequently reach in all directions; handle, finger, and feel with
> the upper left extremity (claimant is right-hand dominant); the ability to
> occasionally climb ramps and stairs; the inability to climb ladders, ropes, or
> scaffolds; she can occasionally balance and stoop; she can never kneel, crouch, or
> crawl; she needs to avoid all exposure to unprotected heights and operating a
> motor vehicle; she needs to avoid concentrated exposure to dust, odors, fumes, or
> pulmonary irritants; she is limited to jobs that can be performed while using a
> hand held assistive device at all times when standing and walking; and she needs
> to be allowed to sit or stand alternatively at will provided that she is not off task
> more than 10% of the work period.

R. 22.  In making this determination, the ALJ accorded varying weights to the opinions of Dr.

Lamberto Flores, Dr. Chitoor Govindaraj, and Dr. Mahendra Misra.  R. 26.  Having determined

Bonilla-Bukhari's RFC, at step four, the ALJ concluded that Bonilla-Bukhari could not perform any past relevant work. R. 26. At step five, the ALJ found that Bonilla-Bukhari's ability to perform "all or substantially all of the requirements" of a level of the "full range of light work" was "impeded by additional limitations." R. 27. However, based on the testimony of the VE, the ALJ determined that Bonilla-Bukhari "would be able to perform the requirements of representative occupations," including routing clerk, information clerk, and office helper. R. 27. The ALJ thus determined that Bonilla-Bukhari was not disabled. R. 28.

## II. GOVERNING STANDARDS OF LAW

### A. Scope of Judicial Review Under 42 U.S.C. § 405(g)

A court reviewing a final decision by the Commissioner "is limited to determining whether the [Commissioner's] conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Selian v. Astrue, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam) (citations and internal quotation marks omitted); accord Greek v. Colvin, 802 F.3d 370, 374-75 (2d Cir. 2015) (per curiam); see generally 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); accord Greek, 802 F.3d at 375; Burgess v. Astrue, 537 F.3d 117, 127-28 (2d Cir. 2008); Matthews v. Leavitt, 452 F.3d 145, 152 n.9 (2d Cir. 2006); Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000).

"Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are

supported by substantial evidence." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (per

curiam) (citation and internal quotation marks omitted). Thus, "[i]f the reviewing court finds

substantial evidence to support the Commissioner's final decision, that decision must be upheld,

even if substantial evidence supporting the claimant's position also exists." Johnson v. Astrue,

563 F. Supp. 2d 444, 454 (S.D.N.Y. 2008) (citing Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir.

1990)). The Second Circuit has characterized the substantial evidence standard as "a very

deferential standard of review — even more so than the 'clearly erroneous' standard." Brault v.

Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam). "The substantial

evidence standard means once an ALJ finds facts, [a court] can reject those facts only if a

reasonable factfinder would have to conclude otherwise." Id. (emphasis in original) (citations

and internal quotation marks omitted). "The role of the reviewing court is therefore quite limited

and substantial deference is to be afforded the Commissioner's decision." Johnson, 563 F. Supp.

2d at 454 (citations and internal quotation marks omitted). Importantly, it is not a reviewing

court's function "to determine de novo whether [a claimant] is disabled." Schaal v. Apfel, 134

F.3d 496, 501 (2d Cir. 1998) (citation and internal quotation marks omitted); accord Cage v.

Comm'r of Soc. Sec., 692 F.3d 118, 122 (2d Cir. 2012).

    B.  Standard Governing Evaluation of Disability Claims by the Agency

    The Social Security Act defines the term "disability" as the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to

last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see id.

§ 1382c(a)(3)(A). A person will be found to be disabled only if it is determined that his

"impairments are of such severity that he is not only unable to do his previous work but cannot,

considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To evaluate a Social Security claim, the Commissioner is required to examine: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience."  Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983) (per curiam); accord Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (per curiam); Craig v. Comm'r of Soc. Sec., 218 F. Supp. 3d 249, 260 (S.D.N.Y. 2016).

Regulations issued pursuant to the Act set forth a five-step process that the Commissioner must use in evaluating a disability claim.  See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); see also Burgess, 537 F.3d at 120 (describing the five-step process).  First, the Commissioner must determine whether the claimant is currently engaged in any "substantial gainful activity."  20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).  Second, if the claimant is not engaged in substantial gainful activity, the Commissioner must decide if the claimant has a "severe medically determinable physical or mental impairment," 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii), which is an impairment or combination of impairments that "significantly limits [the claimant's] physical or mental ability to do basic work activities," 20 C.F.R. §§ 404.1520(c), 416.920(c).  Third, if the claimant's impairment is severe and is listed in 20 C.F.R. part 404, subpart P, appendix 1, or is equivalent to one of the listed impairments, the claimant must be found disabled regardless of his age, education, or work experience.  See 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d).  Fourth, if the claimant's impairment is not listed and is not equal to one of the listed impairments, the Commissioner must review the claimant's RFC to determine if the claimant is able to do work

he or she has done in the past, i.e., "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is able to do such work, he or she is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Finally, if the claimant is unable to perform past relevant work, the Commissioner must decide if the claimant's RFC, in addition to his or her age, education, and work experience, permits the claimant to do other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant cannot perform other work, he or she will be deemed disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). The claimant bears the burden of proof on all steps except the final one — that is, proving that there is other work the claimant can perform. See Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam).

III.  DISCUSSION

Bonilla-Bukhari raises three grounds for reversing the ALJ's decision: (1) the method of appointment of the ALJ who rendered the decision in her case did not conform to the requirements of the Appointments Clause of the United States Constitution, Pl. Mem. at 4, 5-6; (2) the ALJ erred by failing to expressly consider her obesity, id. at 4, 6-8; and (3) the ALJ erred when he concluded that she could perform light duty jobs identified by the VE where the ALJ also gave great weight to the opinions of two examining physicians who imposed limitations with regard to prolonged standing and sitting, id. at 4-5, 9-11. We discuss each argument next.

A.  The Appointments Clause and Waiver

Bonilla-Bukhari argues that the ALJ who presided over her case "was an inferior officer, but the method of his appointment did not conform to the Appointments Clause of the United States Constitution . . . which vests the power to appoint inferior Offices [sic] in the President, the courts of law, or the heads of departments." Id. at 5 (citing U.S. Const. art. II, cl. 2). Bonilla-Bukhari cites Lucia v. Securities and Exchange Commission, 138 S. Ct. 2044 (2018), a

recent Supreme Court decision, which held that ALJs employed by the SEC are inferior officers who must be properly appointed. Lucia, 138 S. Ct. at 2053. Lucia further held that "'one who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case' is entitled to relief" in the form of a hearing before a different ALJ. Id. at 2055. Bonilla-Bukhari argues that because SSA's hiring process for ALJs "relied on a merit based selection process administered by the Office of Personnel Management," contrary to the requirements of the Appointments Clause, she is entitled to a new hearing before a different, properly-appointed ALJ. Pl. Mem. at 5. The Commissioner "does not argue . . . that SSA ALJs are employees rather than inferior officers," and acknowledges that much of the reasoning in Lucia applies equally to SSA ALJs. Def. Mem. at 21 n.3. The Commissioner argues, however, that Bonilla-Bukhari forfeited this claim by failing to raise it before either the ALJ or the Appeals Council. Id. at 20-26.

In Sims v. Apfel, 530 U.S. 103 (2000), the Supreme Court held that a Social Security claimant need not exhaust issues by raising them for review by the Appeals Council in order to preserve judicial review of those issues. Id. at 112. However, Sims did not address cases in which a claimant fails to raise an issue both before the Appeals Council and before the ALJ. "Although it appears that the Second Circuit has not yet ruled on this precise issue, a number of district courts in this Circuit have found that failure to raise an issue before the ALJ waives that issue's review by the District Court." Watson v. Astrue, 2010 WL 1645060, at *3 (S.D.N.Y. Apr. 22, 2010) (citing cases); accord Guzman v. Berryhill, 2018 WL 3387319, at *22 (S.D.N.Y. June 12, 2018); Lewis v. Berryhill, 2018 WL 1377303, at *4 (D. Conn. Mar. 19, 2018) (citing Plante v. Astrue, 2009 WL 1951352, at *2 (N.D.N.Y. July 2, 2009)); Carvey v. Astrue, 2009 WL 3199215, at *14 (N.D.N.Y. Sept. 30, 2009), aff'd on other grounds, 380 F. App'x 50 (2d Cir.

2010). In addition, "[s]ome Courts of Appeals have held that failure to raise an issue before the ALJ waives judicial review of the issue, at least where the claimant was represented by counsel before the ALJ." Watson, 2010 WL 1645060, at *3 (internal citations and quotation marks omitted); see Anderson v. Barnhart, 344 F.3d 809, 814 (8th Cir. 2003); Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir. 1999); see also Mills v. Apfel, 244 F.3d 1, 8 (1st Cir. 2001). Here, Bonilla-Bukhari was represented by counsel before the ALJ.

Bonilla-Bukhari cites Muhammad v. Berryhill, No. 18-172 (E.D. Pa. Nov. 2, 2018) (annexed to Pl. Reply), a case in which Magistrate Judge Timothy Rice of the Eastern District of Pennsylvania remanded the plaintiff's case on the grounds that "the ALJ's decision was a nullity based on Lucia." Id. at *3. In particular, Bonilla-Bukhari highlights Judge Rice's citation to Freytag v. Comm'r, 501 U.S. 868, 879 (1991), and his observation that "Muhammad 'raised his objection at the earliest possible opportunity after Lucia was decided.'" Pl. Reply at 1 (quoting Muhammad, slip op. at 2). Bonilla-Bukhari argues that Freytag requires a remand because it held that "Appointments Clause objections [are] 'structural constitutional objections' . . . [which] can be considered on appeal whether or not they were ruled upon at an earlier stage." Id. at 1-2 (citing Muhammad, slip op. at 7) (citing Freytag, 501 U.S. at 879). Since Bonilla-Bukhari filed her brief, another Magistrate Judge has concurred with Judge Rice's reasoning. See Fortin v. Commr. of Soc. Sec., 2019 WL 421071, at *1-4 (E.D. Mich. Feb. 1, 2019).

This Court, however, agrees with the vast majority of courts that have considered this issue following Lucia and have concluded that exhaustion before the ALJ is required. See, e.g., Catherine V, v. Berryhill, 2019 WL 568349, at *2 (D. Minn. Feb. 12, 2019); Axley v. Commr., 2019 WL 489998, at *1 (W.D. Tenn. Feb. 7, 2019); Fortin v. Comm'r, 2019 WL 421071, at *2 (E.D. Mich. Feb. 1, 2019); Shipman v. Berryhill, 2019 WL 281313, at *3 (W.D.N.C. Jan. 22,

2019); <u>Dierker v. Berryhill</u>, 2019 WL 246429, at \*2-4 (S.D. Cal. Jan. 16, 2019); <u>A.T. v. Berryhill</u>, 2019 WL 184103, at \*7 (D. Kan. Jan. 14, 2019); <u>Velasquez v. Berryhill</u>, 2018 WL 6920457, at \*2-3 (E.D. La. Dec. 17, 2018); <u>Abbington v. Berryhill</u>, 2018 WL 6571208 (S.D. Ala. Dec. 13, 2018); <u>Davis v. Comm'r of Soc. Sec.</u>, 2018 WL 4300505, at \*8-9 (N.D. Iowa Sept. 10, 2018); <u>Trejo v. Berryhill</u>, 2018 WL 3602380, at \*3 n.3 (C.D. Cal. July 25, 2018).

We find the reasoning of <u>Abbington</u> to be helpful and persuasive. In <u>Abbington</u>, the plaintiff also "argue[d] [that] the forfeiture of her Appointments Clause challenge should be excused under the reasoning of <u>Freytag</u>." 2018 WL 6571208, at \*6. As the court in <u>Abbington</u> explained, <u>id.</u> at \*2, in <u>Freytag</u>, the Supreme Court held that even though the petitioners in that case had waived their rights to assert an Appointments Clause challenge "not only by failing to raise a timely objection to the assignment of their cases to a special trial judge, but also by consenting to the assignment," <u>Freytag</u>, 501 U.S. at 878, the Supreme Court held that it could hear the merits of the petitioner's challenge because the Supreme Court, "in the past . . . has exercised its discretion to consider nonjurisdictional claims that had not been raised below," <u>id.</u> (citing <u>Grosso v. United States</u>, 390 U.S. 62, 71-72 (1968); <u>Glidden Co. v. Zdanok</u>, 370 U.S. 530, 535-536 (1962); <u>Hormel v. Helvering</u>, 312 U.S. 552, 556-560 (1941)). In particular, <u>Freytag</u> noted that <u>Glidden</u> — a case challenging rulings by Court of Claims and other judges — "expressly included Appointments Clause objections to judicial officers in the category of nonjurisdictional structural constitutional objections that could be considered on appeal whether or not they were ruled upon below." <u>Id.</u> at 878-79. Like the Court in <u>Glidden</u>, <u>Freytag</u> reasoned that it was "faced with a constitutional challenge that is neither frivolous nor disingenuous," because the "[t]he alleged defect in the appointment of the Special Trial Judge goes to the validity of the Tax Court proceeding that is the basis for this litigation." <u>Id.</u> at 879. The <u>Freytag</u>

Court concluded that despite "disruption to sound appellate process entailed by entertaining objections not raised below . . . this is one of those rare cases in which we should exercise our discretion to hear petitioners' challenge to the constitutional authority of the Special Trial Judge." Id.

However, as Abbington points out, several years after deciding Freytag, the Supreme Court in Ryder v. United States, 515 U.S. 177 (1995), stated the following rule:

> one who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case is entitled to a decision on the merits of the question and whatever relief may be appropriate if a violation indeed occurred. Any other rule would create a disincentive to raise Appointments Clause challenges with respect to questionable judicial appointments.

Id. at 182–83 (emphasis added). As in Lucia, the plaintiff in Ryder raised his Appointments Clause argument during the administrative process. See Ryder, 515 U.S. at 179.

The reasoning articulated in Abbington is applicable here:

> Abbington's constitutional challenge here is also "neither frivolous nor disingenuous." However, the undersigned is not convinced that this is "one of those rare cases" as in Freytag where forfeiture should be excused. First, regularly excusing forfeiture of Appointments Clause challenges under Freytag risks eroding the rule in Ryder, decided nearly four years after Freytag and recently reaffirmed in Lucia, that an Appointments Clause challenge must be "timely" to afford the challenger relief. Second, the undersigned notes that Freytag, Glidden, and Lamar all involved Appointments Clause challenges concerning entities of a more judicial nature than the Social Security Administration — the U.S. Tax Court in Freytag, and the U.S. courts of appeal and/or district courts in Glidden and Lamar. See United States v. Jones, 74 M.J. 95, 96 (C.A.A.F. 2015) ("Citing Ryder . . ., the Government urges that we treat the issue of Mr. Soybel's appointment[ to the United States Air Force Court of Criminal Appeals] as forfeited by the failure of Appellant to raise the issue prior to petitioning this Court. The problem with this approach is that it ignores the consistent treatment of the de facto officer doctrine by the Supreme Court, which has drawn a distinction between deficiencies which are 'merely technical' and may be forfeited if not timely raised, and those which 'embod[y] a strong policy concerning the proper administration of judicial business,' which the Court will reach on direct review whether raised below or not." (quoting Glidden, 370 U.S. at 535–36, 82 S.Ct. 1459)).

> Finally, <u>Ryder</u>'s rule that relief is due for "timely" challenges was created as an incentive "to raise Appointments Clause challenges with respect to questionable judicial appointments." <u>Ryder</u>, 515 U.S. at 182–83, 115 S.Ct. 2031. Regularly permitting unsuccessful claimants to raise Appointments Clause challenges for the first time on judicial review, especially when the arguments underlying those challenges were available at the administrative level, would "encourage the practice of 'sandbagging': suggesting or permitting, for strategic reasons, that the [adjudicative entity] pursue a certain course, and later — if the outcome is unfavorable — claiming that the course followed was reversible error." <u>Freytag</u>, 501 U.S. at 895, 111 S.Ct. 2631 (Scalia, J., concurring in part and concurring in the judgment). Here, <u>Freytag</u> itself, decided in 1991, gave Abbington sufficient authority to raise the present Appointments Clause challenge at the administrative level.

<u>Abbington</u>, 2018 WL 6571208, at *7. This Court concurs with the reasoning in <u>Abbington</u> and finds that Bonilla-Bukhari has waived her Appointments Clause challenge.

B. <u>Consideration of Bonilla-Bukhari's Obesity</u>

Bonilla-Bukhari next argues that the ALJ erred by "fail[ing] to discuss the impact of obesity in connection with co-existing musculoskeletal and respiratory impairments when assessing Plaintiff's RFC." Pl. Mem. at 4. Bonilla-Bukhari is correct that the ALJ in this case did not explicitly mention her obesity in the decision, <u>see</u> Pl. Mem. at 7, which the Commissioner acknowledges, <u>see</u> Def. Mem. at 26-27.

Under SSR 02-1p, obesity may be considered "severe" — and thus medically equal to a listed disability — if "alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities." <u>See</u> SSR 02-1p, Titles II and XVI: Evaluation of Obesity, 67 Fed. Reg. 57,859, 57,861-62 (Sept. 12, 2002), 2002 WL 34686281, at *4. The ruling "instruct[s] adjudicators to consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity." 67 Fed. Reg. at 57,860; <u>accord</u> <u>Dieguez v. Berryhill</u>, 2017 WL 3493255, at

*3 (S.D.N.Y. Aug. 15, 2017); Battle v. Colvin, 2014 WL 5089502, at *5 (W.D.N.Y. Oct. 9, 2014). "Obesity is not in and of itself a disability," however, and courts have held that "an ALJ's failure to explicitly address a claimant's obesity does not warrant remand." Guadalupe v. Barnhart, 2005 WL 2033380, at *6 (S.D.N.Y. Aug. 24, 2005) (citations omitted). "'Conversely, the ALJ's obligation to discuss a claimant's obesity alone, or in combination with other impairments, diminishes where evidence in the record indicates the claimant's treating or examining sources did not consider obesity as a significant factor in relation to the claimant's ability to perform work related activities.'" Battle, 2014 WL 5089502, at *5 (quoting Farnham v. Astrue, 832 F. Supp. 2d 243, 261 (W.D.N.Y. 2011)) (citing cases); accord Cahill v. Colvin, 2014 WL 7392895, at *27 (S.D.N.Y. Dec. 29, 2014).

Here, while the ALJ did not explicitly discuss Bonilla-Bukhari's obesity, he considered the opinions of physicians who themselves considered her weight. For example, the ALJ gave great weight to the opinions of Dr. Flores, who observed that Bonilla-Bukhari was obese during a June 9, 2014, consultative examination. R. 26, 334-37. While determining Bonilla-Bukhari's RFC, the ALJ also considered notes from examinations by Dr. Michael Kang from 2015, in which he repeatedly noted that Bonilla-Bukhari was obese. See R. 25, 682, 701. While Dr. Misra did not explicitly note that Bonilla-Bukhari was obese, he did note that Bonilla-Bukhari had a height of five feet two inches and a weight of 176 pounds, R. 500, which would mean Bonilla-Bukhari had a Body Mass Index between 30 and 31, making her obese, see Body Mass Index Table (annexed to Pl. Mem.) ("BMI Table").

Having reviewed the medical record, we are not aware of — and Bonilla-Bukhari does not point to — any notes from any of the providers who examined or treated her indicating that her obesity had any particular impact on any of her impairments. Case law holds that an "ALJ's

obligation to discuss a claimant's obesity alone, or in combination with other impairments, diminishes where evidence in the record indicates the claimant's treating or examining sources did not consider obesity as a significant factor in relation to the claimant's ability to perform work related activities." Battle, 2014 WL 5089502, at *5. Thus, as was true in Battle, in this case, "the record reflects that plaintiff's treating and consultative examining medical sources were aware of plaintiff's obesity, but there is no indication that any medical source attributed any symptoms, limitations of function, or exacerbation of other impairments to her weight." Id. In addition, "during the hearing before the ALJ, plaintiff was not questioned by her attorney about any specific functional limitations relating to obesity, nor did she allege obesity as a disabling impairment or include obesity as a factor limiting her ability to work in any of the disability reports submitted in association with her claim." Id. at *6. Under these circumstances, the Court concludes that the ALJ did not err.

      C.  The Vocational Expert's Testimony

Bonilla-Bukhari argues that the ALJ erred by finding that she could perform three light duty jobs identified by the VE, while also according great weight to the opinion of two examining physicians who imposed limitations with respect to prolonged standing. Pl. Mem. 4-5. Bonilla-Bukhari notes that "[l]ight work requires frequent lifting or carrying of objects weighing up to 10 pounds," id. at 9 (citing 20 C.F.R. §§ 404.1567(b), 416.967(b)), and that "[a] job is considered light when it requires a good deal of walking or standing," id. at 10 (citing 20 C.F.R. §§ 404.1567(b), 416.967(b)). Bonilla-Bukhari points out that "[t]he VE testified that someone who needs a cane at all times for standing and walking would be generally limited to sedentary work," id. at 10, which was indeed the VE's testimony, see R. 88. While Bonilla-Bukhari noted that the VE stated that his testimony was consistent with the DOT, Bonilla-

Bukhari questions whether this is so, "given that the DOT classifies the positions identified by the VE as light duty." Pl. Mem. at 10.

During the hearing, the VE identified three jobs that a person with the claimant's RFC and the need to use a hand-held assistive device at all times when standing or walking could perform: routing clerk, information clerk, and office helper. R 88, 90. The VE testified that his testimony was consistent with information in the DOT, and that he used his own "work and experience and reading material" to answer questions regarding the percentage of time the worker could be off task, the acceptability of absences, and the availability of a sit/stand option. R 87. In his decision, the ALJ found that "the vocational expert's testimony [was] consistent with the information contained in the Dictionary of Occupational Titles." R. 27.

At the outset, substantial evidence supports the ALJ's determination of Bonilla-Bukhari's RFC. The ALJ found that Bonilla-Bukhari retained the ability to perform light work with several limitations, including the ability to stand or walk for a total of only four hours out of an eight hour workday, that she must be able to use a hand held assistive device at all times while standing and walking, and that she needs to be allowed to sit or stand alternatively at will, in addition to other environmental and assertive limitations. R. 22. The ALJ properly accounted for Dr. Misra's finding that it would be "difficult for [Bonilla-Bukhari] to do jobs which require prolonged standing, sitting, walking, climbing, crouching, bending, crawling, lifting pulling or pushing," R. 501, by requiring that Bonilla-Bukhari be "allowed to sit or stand alternatively at will," R. 22, as well as by limiting pushing and pulling, climbing ramps and stairs to "occasionally," R. 22, and by finding that she could "never kneel, crouch, or crawl," R. 22. This RFC is also supported by Dr. Flores' opinion that Bonilla-Bukhari must avoid "prolonged walking, standing, climbing stairs and heavy lifting." R. 337.

Substantial evidence also supports the ALJ's finding that the VE's testimony was consistent with the DOT. "[A] vocational expert is not required to identify with specificity the figures or sources supporting his conclusion, at least where he identified the sources generally." McIntyre v. Colvin, 758 F.3d 146, 152 (2d Cir. 2014) (citing Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 450 (2d Cir. 2012)).

While Bonilla-Bukhari is correct that the regulations provide that "a job in [the category of light work] requires a good deal of walking or standing," the ALJ made no finding that Bonilla-Bukhari could perform just any job classified as "light work." Instead, the ALJ sought testimony from the VE on whether a light work job with Bonilla-Bukhari's significant restrictions existed in the national economy. The VE identified three jobs that would satisfy these criteria. Of course, "[t]he Commissioner need show only one job existing in the national economy that [a claimant] can perform." Bavaro v. Astrue, 413 F. App'x 382, 384 (2d Cir. 2011) (citing 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1566(b)). Nothing in the job descriptions provided in the DOT for the identified jobs suggests that the VE was wrong to testify that these particular jobs require a worker to walk more than four hours out of an eight hour day, or that they preclude a sit/stand option. See Dictionary of Occupational Titles, §§ 222.687-022, 237.367-018, 239.567-010. The ALJ was also entitled to rely upon the VE's testimony that, based on his work experience, these jobs allow for a sit/stand option. R. 27, 87, 90; see McIntyre, 758 F.3d at 152 ("the ALJ reasonably credited this testimony, which was given on the basis of the expert's professional experience and clinical judgment, and which was not undermined by any evidence in the record").

Because the ALJ's determination of Bonilla-Bukhari's RFC is supported by substantial evidence, the ALJ was entitled to credit the VE's testimony based on his experience that there

were jobs that existed in significant numbers in the national economy that Bonilla-Bukhari could perform.

IV. CONCLUSION

For the foregoing reasons, Bonilla-Bukhari's motion for judgment on the pleadings (Docket # 18) is denied and the Commissioner's motion for judgment on the pleadings (Docket # 24) is granted. The Clerk is requested to enter judgment.

SO ORDERED.

Dated: New York, New York
       March 4, 2019

GABRIEL W. GORENSTEIN
United States Magistrate Judge

22